IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JAMES ANTHONY MCNALLY                                        PLAINTIFF

V.                              CIVIL ACTION NO. 3:17-cv-00847-CWR-JCG

DIRECTOR B.O.P. MARK INCH
REGIONAL DIRECTOR J.A. KELLER, B.O.P.
WARDEN C. NASH Yazoo Med. F.C.C., B.O.P.
DR. UNKNOWN NATAL Physician, Yazoo F.C.C., B.O.P.
DR. WILLIAM PORTER Contract Surgeon for B.O.P.            DEFENDANTS

## REPORT AND RECOMMENDATION

BEFORE THE COURT is the Complaint filed *pro se* by James Anthony
McNally, a postconviction inmate in the custody of the Federal Bureau of Prisons
(BOP), who claims that Defendants violated his Eighth Amendment rights by
delaying or failing to provide medically necessary treatment, including shoulder
surgery. McNally advances claims under *Bivens v. Six Unknown Fed. Narcotics
Agents,* 404 U.S. 388 (1971) against BOP Director Mark Inch; J.A. Keller, Regional
Director for BOP Southeast Region; Cheron Y. Nash, Warden at Federal
Correctional Complex, in Yazoo City, Mississippi (FCC Yazoo); Dr. Anthony
Chambers, Clinical Director for the Health Services Department at FCC Yazoo; Dr.
Norma Natal, a primary care physician at FCC Yazoo; and Dr. William Porter, an
orthopedic surgeon. McNally seeks an injunction to obtain a second shoulder
surgery, compensatory damages, and punitive damages. Director Inch, Regional
Director Keller, Dr. Chambers, Dr. Natal, and Warden Nash have filed a Motion to

Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 30). McNally has filed a Response. (ECF No. 40). Defendants filed no rebuttal.

Having considered the Motion, the record, and relevant law, the undersigned United States Magistrate Judge concludes that Defendants' Motion to Dismiss, or in the Alternative for Summary Judgment should be GRANTED IN PART AND DENIED IN PART. The Eighth Amendment claims against Director Inch and Regional Director Inch should be dismissed without prejudice for lack of personal jurisdiction. The Eighth Amendment claims against Dr. Chambers must be dismissed with prejudice because 42 U.S.C. § 233(a) bars a *Bivens* action against a United States Public Health Services officer for actions arising out of the performance of medical or related functions within the scope of his office. The Eighth Amendment claims against Warden Nash should be dismissed with prejudice because Warden Nash lacked personal involvement in McNally's medical care. The Eighth Amendment claims against Dr. Natal should be dismissed with prejudice because Dr. Natal is entitled to qualified immunity. McNally, a *pro se* litigant, should be allowed an opportunity to amend his Complaint to advance a claim against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2672 et seq.

## BACKGROUND

McNally has been in BOP custody since 2000, serving a sentence for bank robbery and related crimes. (ECF No. 30-1, at 1; ECF No. 40, at 9). At the time he

filed this suit in October 2017, McNally was housed at FCC Yazoo. He has since been transferred to the Federal Correctional Complex in Pollock, Louisiana.

McNally suffers from a torn rotator cuff in his right shoulder. In an email attached to his Complaint, McNally states that he was injured in a 1986 accident. (ECF No. 1-5, at 3). BOP medical records indicate that, in 2001, McNally broke his humerus while arm wrestling and had surgery to repair the fracture. (ECF No. 30-2, at 27). Plaintiff's shoulder was x-rayed in 2014, while he was housed at the Federal Correctional Complex in Gilmer, West Virginia. (ECF No. 9).

In November 2015, after being transferred to FCC Yazoo, McNally was doing pushups when he heard a popping sound and experienced pain in his shoulder. (ECF No. 30-2, at 32). McNally's shoulder was x-rayed on December 16, 2015. (ECF No. 44, at 4). At the suggestion of his initial primary care physician at FCC Yazoo, Dr. Natal, McNally was evaluated by Dr. Porter, an orthopedic surgeon, on January 20, 2016. *Id.* at 3. Dr. Porter's exam showed that McNally had "a positive impingement sign with decreased ROM of the shoulder secondary to pain. Has large spurs on acromion with impingement secondary to spur." *Id.* at 26. Dr. Porter "[r]ecommended mini-open decompression of the right shoulder with possible rotator cuff repair." (ECF No. 30-2, at 30).

McNally's BOP medical records indicate that surgery was delayed "due to physical therapy documentation." (*Id.* at 39). They also state that surgery was initially denied by BOP's regional office, with "exercise recommended." *Id.* at 43. Dr. Natal prescribed shoulder exercises, and McNally complied, but the exercises

caused bruising and pain. *Id.* at 41. McNally maintains that a rabbi intervened on his behalf and convinced BOP to reverse its decision to deny surgery. (ECF No. 1-3, at 6; ECF No. 40, at 5, 11). McNally underwent mini-open decompression surgery, performed by Dr. Porter, on July 27, 2016. (ECF No. 41, at 3).

Dr. Chambers is a medical doctor who is the Clinical Director for Health Services at FCC Yazoo. (ECF No. 30-2, at 1). According to Dr. Chambers, McNally's surgery by Dr. Porter was "conservative and surgical management of impingement of the shoulder. The rotator cuff was mentioned, but was not thought to be repairable prior to surgery. By the direct inspection via arthroscopy, the orthopedic surgeon verified this." (ECF No. 30-2, at 3). McNally's request for an MRI prior to surgery was denied, which McNally submits led Dr. Porter to "botch" the surgery. (ECF No. 1-3, at 1; ECF No. 40, at 7, 9; ECF No. 44-5, at 1).

Dr. Natal examined McNally after surgery on August 11, 2016. (ECF No. 30-2, at 63). McNally complained that his pain was worse than before surgery, and he lacked even more range of motion. *Id.* at 63, 66. Dr. Natal ordered an MRI, which was done on August 22, 2016. *Id.* at 71. Dr. Natal's examination notes from October 6, 2016, indicate that McNally was "still having limited range of motion with pain radiated from shoulder to upper neck right side." *Id.* Based upon the MRI results, Dr. Natal requested a second surgical consultation. *Id.* at 3, 75. Dr. Natal examined McNally again on October 28, 2016, and again requested a second surgical consultation. *Id.* at 75. McNally was seen by Dr. Dare, an orthopedic surgeon, on December 14, 2016. *Id.* at 83. Dr. Dare's diagnosis was "[c]hronic severe rotator cuff

tear unrepairable, recommending arthroscopic right rotator repair with allograft/xerograft augmentation." *Id.* at 86.

BOP certification for a second surgical procedure to address McNally's continued complaints of shoulder pain was "deferred by regional officials with instructions to attempt more conservative treatments prior to surgery . . . ." (ECF No. 30-2, at 3, 91). McNally submits that this occurred on April 4, 2017. (ECF No. 40, at 15). He has provided an undated BOP administrative remedy response, which provides that a second surgery was "disapproved until conservative treatment can be completed since there was no evidence of attempted conservative therapy of a joint injection therapy trial." (ECF No. 1-3, at 1).

McNally was approved for corticosteroid injections. (ECF No. 40, at 15). Dr. Dare administered corticosteroid injections to McNally on July 12, 2017. (ECF No. 44-7, at 2). On that date, Dr. Dare continued to recommend surgery and advised that the steroid would only temporarily relieve pain and would not cause healing. (ECF No. 30-2, at 98). In his Declaration of May 4, 2018, Dr. Chambers averred that "additional surgical intervention remains under consideration." *Id.* at 4.

McNally filed his Complaint on a form used by prisoners filing a complaint under the Civil Rights Act, 42 U.S.C. § 1983. (ECF No. 1). Because McNally's Complaint challenged the conditions of confinement at a Federal Correctional Complex, the Court issued an Order construing the civil action as a *Bivens* action. (ECF No. 7). A *Bivens* action is analogous to a civil rights action brought under 28 U.S.C. §1983, the only difference being that *Bivens* applies to alleged constitutional

violations by federal actors, rather than state officials. *See Izen v. Catalina,* 398

F.3d 363, 367 n.3 (5th Cir. 2005). McNally filed an Amended Complaint, confirming

that he was advancing Eighth Amendment claims pursuant to *Bivens.* (ECF No. 8-

1, at 2). McNally seeks two million dollars in compensatory damages and two

million dollars in punitive damages. (ECF No. 1, at 4). McNally asserts that he

"want[s] the surgery that Dr. Dare recommended to repair what Dr. Porter has done

to me." (ECF No. 44, at 6-7).

## DISCUSSION

A. <u>McNally Has Not Shown That the Court Has Personal Jurisdiction Over BOP</u>
   <u>Director Inch and BOP Regional Director Keller</u>

BOP Director Inch and BOP Regional Director Keller maintain that the Court

lacks personal jurisdiction over them. Director Inch's official duty station is at

BOP's Central Office in Washington, D.C. (Decl. of Mark S. Inch, ECF No. 30-4).

Regional Director Keller's official duty station is BOP's Southeast Regional Office in

Atlanta, Georgia. (Decl. of J.A. Keller, ECF No. 30-3).

When a defendant raises an objection to the Court's personal jurisdiction, the

burden is on the plaintiff to make a *prima facie* showing that jurisdiction exists.

*Buillion v. Gillespie,* 895 F.2d 213, 216-17 (5th Cir. 1990). A *prima facie* case may be

established "by alleging facts in the complaint and affidavits sufficient to establish

jurisdiction over the non-resident defendants." *Caldwell v. Palmetto State Sav.*

*Bank,* 811 F.2d 916, 917-18 (5th Cir. 1987). In determining whether a *prima facie*

case exists, the Court must accept as true the plaintiff's allegations and resolve any

factual disputes in the plaintiff's favor. *Stripling v. Jordan Production Co.,* 234 F.3d 863, 869 (5th Cir. 2000).

A district court's exercise of personal jurisdiction comports with due process if the plaintiff shows that (1) the defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the state and (2) the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice." *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colorado,* 615 F.3d 364, 367 (5th Cir. 2010).

McNally submits that "Director Inch and Regional Director Keller supervised the committee that denied Plaintiff of surgery." (ECF No. 11, at 2). McNally urges that "R.D. J.A. Keller, and Director Mark Inch, were both sent requests and letters asking for help with my shoulder pain. Nothing was done until I got an outside organization involved." (ECF No. 40, at 3). "Region was aware of my plight. Central office was aware of my plight. And it took a rabbi to thwart the BOP cost cutting policy on medical costs." *Id.* at 11. McNally faults "Region" for not approving a second surgery and for approving "a single cortisone shot" instead. *Id.* at 15.

In his Declaration, Regional Director Keller avers that he has no recollection of personal involvement in McNally's Administrative Remedy Appeal No. 900281-R1. (ECF No. 30-3, at 1). Keller states that while the Administrative Appeal bears the signature of the Regional Director, "this function has been delegated to other regional officials who sign on my behalf. *Id.* Keller submits that even if he did

review McNally's Appeal, such review would have taken place in his official capacity as Regional Director and would be purely supervisory in nature. *Id.* at 1-2.

In his Declaration, BOP Director Inch states that his duties include supervising BOP facilities across the United States and do not include reviewing inmates' medical decisions. (ECF No. 30-4, at 1). Inch avers that he had no personal involvement with McNally's administrative appeal, which was reviewed prior to Inch serving as Director, and which was reviewed by BOP's National Inmate Appeals Coordinator. *Id.* at 2.

On numerous occasions, this Court has "held that mere allegations relating to a BOP official's decisions regarding an inmate's administrative appeal outside the forum state, and other supervisory activities over a facility inside the forum state, are insufficient to establish personal jurisdiction." *O'Cull v. Bureau of Prisons,* No. 5:09-cv-62-DCB-MTP, 2009 WL 6637968, *3 (S.D. Miss. Dec. 16, 2009), report and recommendation adopted, 2010 WL 2671978 (S.D. Miss. Jun. 30, 2009); *see Martinez v. United States,* No. 3:14-cv-810-CWR-FKB, 2016 WL 5301184, *3-4 (S.D. Miss. Aug. 22, 2016), report and recommendation adopted, 2016 WL 5173401 (S.D. Miss. Sept. 21, 2016); *Bouman v. Broome,* No. 3:13-cv-847-KS-MTP, 2014 WL 3849905, *2-3 (S.D. Miss. Aug. 4, 2014); *Alba v. Randle,* No. 5:10-cv-49-DCB-RHW, 2011 WL 456572, *2 (S.D. Miss. Sept. 29, 2011); *Walker v. Reese,* No. 5:06-cv-154-DCB-MTP, 2008 WL 4426123 (S.D. Miss. Sept. 25, 2008), aff'd, 364 F. App'x 872 (5th Cir. 2010).

McNally merely alleges that Director Inch and Regional Director Keller were aware of his concerns and complaints because he sent them requests and letters asking for help with his shoulder pain. (ECF No. 40, at 3). Even if the Court accepts as true McNally's allegation, such facts are insufficient to establish personal jurisdiction. *Walker,* 2008 WL 4426123, at *4; *Bouman,* 2014 WL 3849905, at *3. McNally's allegations and arguments do not suffice to make a *prima facie* showing of the requisite minimum contacts consistent with due process to exercise personal jurisdiction over Director Inch or Regional Director Keller. The claims against BOP Director Inch and Regional Director Keller should be dismissed without prejudice for lack of personal jurisdiction.

B. 42 U.S.C. § 233(a) Precludes a *Bivens* Action Against Dr. Chambers for the Harm Alleged

Under the Public Health Services Act, employees or officers of the Public Health Service are entitled to absolute immunity from *Bivens* suits. 42 U.S.C. § 233(a) provides:

> The remedy against the United States provided by sections 1346(b) and 2672 of Title 28, or by alternative benefits provided by the United States where the availability of such benefits precludes a remedy under section 1346(b) of Title 28, for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the office or employee (or his estate) whose act or omission gave rise to the claim.

42 U.S.C. § 233(a).

It is undisputed that Dr. Chambers is now, and was at the time of the alleged incidents, a medical doctor employed by the United States Public Health Service (USPHS) as Clinical Director for the Health Services Department at FCC Yazoo. (Decl. of Anthony Chambers, ECF No. 30-2, at 1). Dr. Chambers has submitted a sworn Declaration, under penalty of perjury, attesting that his involvement with McNally concerning the facts at issue in this case occurred while Dr. Chambers was acting as a USPHS officer acting within the course and scope of his office as Clinical Director at FCC Yazoo. *Id.* at 2.

By its own terms, 42 U.S.C. § 233(a), limits recovery for any conduct relating to improper medical care by a USPHS employee to suits against the United States. *See Hui v. Castaneda,* 559 U.S. 799, 806 (2010). Dr. Chambers is statutorily immune from McNally's Eighth Amendment *Bivens* claims. *See Montoya-Ortiz v. Brown,* 154 F. App'x 437, 439 (5th Cir. 2005); *Schrader v. Sandoval,* 1999 WL 1235234, *2 (5th Cir. Nov. 23, 1999); *Herrera v. Pearson,* No. 5:12-cv-123-DPJ-FKB, 2013 WL 2637723, *6 (S.D. Miss. June 12, 2013); *Rankin v. Pearson,* No. 5:11-cv-138-DCB-RHW, 2013 WL 1305517, *8 (S.D. Miss. Mar. 26, 2013); *Walker v. Reese,* No. 5:06-cv-154-DCB-MTP, 2008 WL 4426123 (S.D. Miss. Sept. 25, 2008), aff'd, 364 F. App'x 872 (5th Cir. 2010); *O'Cull v. Bureau of Prisons,* No. 5:09-cv-62, 2009 WL 6637968, *3 (S.D. Miss. Dec. 16, 2009), report and recommendation adopted, 2010 WL 2671978, *4 (S.D. Miss. June 30, 2010). The Eighth Amendment *Bivens* claim against Dr. Chambers should be dismissed with prejudice.

C.  Warden Nash and Dr. Natal Are Entitled to Summary Judgment

Warden Nash and Dr. Natal move for dismissal or summary judgment on all claims against them. Because the parties have submitted matters outside the pleadings, the undersigned has considered the Motion by Dr. Natal and Warden Nash as one seeking summary judgment. *See* Fed. R. Civ. P. 12(b); *Young v. Biggers,* 938 F.2d 565, 568 (5th Cir. 1991). Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *see also Moore v. Miss. Valley State Univ.,* 871 F.2d 545, 549 (5th Cir. 1989); *Washington v. Armstrong World Indus.,* 839 F.2d 1121, 1122 (5th Cir. 1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. The movant need not, however, support the motion with materials that negate the opponent's claim. *Id.* As to issues on which

11

the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. *Id.* at 323-24. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. It is improper for the district court to "resolve factual disputes by weighing conflicting evidence, . . . since it is the province of the jury to assess the probative value of the evidence." *Kennett-Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is also improper where the court merely believes it unlikely that the non-moving party will be able to prevail at trial. *Nat'l Screen Serv. Corp. v. Poster Exch., Inc.,* 305 F.2d 647, 651 (5th Cir. 1962).

"[T]here is an implied right of action against a federal actor who shows deliberate indifference to a prisoner's serious medical needs in violation of the Eighth Amendment." *Carlucci v. Chapa,* 884 F.3d 534, 538 (5th Cir. 2018) (citing *Bivens,* 403 U.S. at 389, *Ziglar v. Abbasi,* 137 S.Ct. 1843, 1856-57 (2017)). "A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an 'unnecessary and wanton infliction of pain.'" *Easter v. Powell,* 467 F.3d 459, 463 (5th Cir. 2006) (quoting *Wilson v. Seiter,* 501 U.S. 294, 297 (1991); *see also Estelle v. Gamble,* 429 U.S. 97, 105 (1976). A prison

official acts with deliberate indifference "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994).

"Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert v. Caldwell,* 463 F.3d 339 (5th Cir. 2006); *see Varnado v. Lynaugh,* 920 F.2d 320, 321 (5th Cir. 1991). "A showing of deliberate indifference requires the prisoner to submit evidence that prison officials "'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Id.* (quoting *Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir. 1985)). "[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in a substantial harm" *Mendoza v. Lynaugh,* 989 F.2d 191, 195 (5th Cir. 1993). Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference. *Banuelos v. McFarland,* 41 F.3d 232, 235 (5th Cir. 1995).

1. Warden Nash Was Not Personally Involved in McNally's Medical Care

Warden Nash has served as the Warden of FCC Yazoo since December 2016. (ECF No. 30-5, at 1). McNally alleges that Warden Nash was deliberately indifferent because she agreed to use a contract surgeon to perform surgery on McNally without an MRI, delayed McNally's pre-operative and post-operative

13

treatment, and generally delayed any approval for further treatment in an expedited manner. (ECF No. 8-1, at 6).

There is no *respondeat superior* liability in *Bivens* actions. *Cronn v. Buffington,* 150 F.3d 538, 544 (5th Cir. 1998). Thus, in order to be liable, a prison official must either be personally involved in the acts that caused the constitutional deprivation, or must "implement a policy so deficient that the policy itself acts as a deprivation of constitutional rights." *Id.*

As set forth in her Declaration, Warden Nash holds a supervisory position at FCC Yazoo and was not personally involved in providing McNally medical care or in making any decisions regarding what medical care McNally was to receive. (Decl. of Warden Cheron Nash, ECF No. 30-5). Warden Nash does not make medical referrals or medical determinations. Warden Nash avers that "[t]he responsibility of reviewing and approving medical treatments for a condition such as that mentioned by McNally in his complaint – a chronic shoulder condition – rests with either the Clinical Director, or in some cases, regional medical officials. I do not make medical determinations." *Id.* at 2. Warden Nash attests that she recollects her only personal involvement with McNally's shoulder condition was the review of Administrative Remedy No. 900281-F1. *Id.* at 2. *Bivens* liability cannot be premised upon the role a warden plays in the evaluation of administrative remedies. *See Geiger v. Jowers,* 404 F.3d 371, 373-74 (5th Cir. 2005) (finding that prisoner "does not have a federally protected liberty interest in having [his] grievances resolved to his satisfaction.").

14

Because Warden Nash was not personally involved in Plaintiff's medical treatment, and because there is no *respondeat superior* liability in a *Bivens* action, McNally's claims against Warden Nash should be dismissed. *See Martinez v. United States,* No. 3:14-cv-810-CWR-FKB, 2017 WL 4227515, *3 (S.D. Miss. July 31, 2017), report and recommendation adopted, 2017 WL 4206426 (S.D. Miss. Sept. 20, 2017); *Luna v. Pearson,* No. 5:08-cv-266-DCB-MTP, 2009 WL 1658406, *4 (S.D. Miss. June 11, 2009), report and recommendation adopted, 2009 WL 1938908 (S.D. Miss. July 6, 2009). There is no plausible basis for believing that additional discovery will influence this conclusion. Warden Nash is entitled to summary judgment.

2. <u>Dr. Natal is Entitled to Qualified Immunity</u>

McNally alleges that Dr. Natal, his initial primary care physician at FCC Yazoo, violated his Eighth Amendment rights by acting with deliberate indifference toward his medical needs, including by "delaying any approval by her office for further treatment in an expedited/emergent type response time." (ECF No. 8-1, at 6).

"The doctrine of qualified immunity protects public officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Ramirez v. Martinez,* 716 F.3d 369, 375 (5th Cir. 2013) (citation omitted). "A qualified immunity defense alters the usual summary judgment burden of proof. Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly

15

wrongful conduct violated clearly established law." *Brown v. Callahan,* 623 F.3d 249, 253 (5th Cir. 2010).

Based upon McNally's admissions, Dr. Chambers' Declaration, and the medical records Defendants submitted covering McNally's BOP medical treatment from November 3, 2015, to June 16, 2017, summary judgment in favor of Dr. Natal is appropriate. The medical records indicate that McNally re-injured his shoulder while doing pushups in November 2015. From that point forward, McNally was "prescribed, and received renewals for, both anti-inflammatory drugs and anti-neuropathic drugs to address pain issues relating to his pre-existing, chronic shoulder condition," which were frequently ordered by Dr. Natal. (ECF No. 30-2, at 3, 10 (11/4/15), 12 (11/5/15), 14 (11/19/15), 17-18 (1/14/16), 37 (4/4/16), 47 (7/8/16), 66 (8/11/16), 68-69 (9/22/16), 77 (10/26/16), 78 (11/1/16), 80 (11/28/16), 82 (12/19/16), 85 (1/17/17), 90 (4/4/17), 94 (5/16/17); 97 (5/31/17)). Dr. Natal placed McNally in a chronic care clinic to monitor his condition and ordered an x-ray. *Id.* at 13-15.

At Dr. Natal's request, McNally was evaluated by Dr. Porter, an orthopedic surgeon, on January 20, 2016. According to the Declaration of Dr. Chambers, Dr. Natal did not have authority to authorize or schedule McNally's surgery. (ECF No. 30-2, 1-2). McNally underwent mini-open decompression surgery, by Dr. Porter, on July 27, 2016. Dr. Natal examined McNally after surgery, ordered an MRI, and twice requested a second surgical consult for McNally. (ECF No. 30-2, at 3, 63, 66, 71, 75). In December 2016, around the time that McNally was examined by Dr. Dare, Dr. Martinez became McNally's primary care physician, and Dr. Natal no

16

longer treated McNally. (ECF No. 1, at 8) ("Dr. Natal was removed from my case load when Dr. Martinez took over.").

The record is replete with details of Dr. Natal's medical treatment of McNally. McNally cannot show that Dr. Natal acted with deliberate indifference by refusing to treat him, ignoring his complaints, intentionally treating him incorrectly, or engaging in similar conduct that would evince a wanton disregard for McNally's medical needs. *Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir. 1985); *see Domino v. Texas Dep't of Criminal Justice,* 239 F.3d 752, 756 (5th Cir. 2001). Though McNally "may have not received attention as promptly as he desired, or perhaps even as promptly as would be ideal, any substandard care as alleged does not amount to deliberate indifference" by Dr. Natal. *See Walker v. Reese,* 364 F. App'x 872, 874-75 (5th Cir. 2010) (citing *Farmer,* 511 U.S. at 825, *Wilson,* 501 U.S. at 294; *Estelle,* 429 U.S. at 97; *Gobert,* 463 F.3d at 346; *Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir. 1985). There is no plausible basis for believing that additional discovery will influence the qualified immunity analysis as it pertains to Dr. Natal.

D.  McNally Should Be Given An Opportunity to Amend His Complaint to Assert a Claim Against the United States Under the FTCA

As a sovereign, the United States is immune from suit except to the extent it has consented to be sued. *United States v. Sherwood,* 312 U.S. 584, 586 (1941). The FTCA provides a limited waiver of sovereign immunity from suit and authorizes civil actions for claims for personal injury caused by negligent or wrongful acts or omissions of federal employees while acting within the scope of their employment.

*See* 28 U.S.C. § 1346(b)(1); *Quijano v. United States,* 325 F.3d 564, 567 (5th Cir. 2003).

Generally, a district court errs in dismissing a *pro se* complaint for failure to state a claim without giving the plaintiff an opportunity to amend. *Baxrowx v. Scott,* 136 F.3d 1053, 1054 (5th Cir. 1998). While McNally characterizes his claims as *Bivens* claims, his claims can be liberally construed to give rise to a claim under the FTCA. In fact, McNally has provided a letter from BOP's Consolidated Legal Center stating that McNally's "claim [was] considered for administrative settlement under the [FTCA]." (ECF No. 40-1, at 1-2). FTCA claims may be brought only against the United States as the sole defendant, and not against agencies or employees of the United States. *See* 28 U.S.C. §§ 2671, 2679(a), (b)(1); *see McGuire v. Turnbo,* 137 F.3d 321, 324 (5th Cir. 1998); *Galvin v. Occupational Safety & Health Admni.,* 860 F.2d 181, 183 (5th Cir. 1988).

It is recommended that McNally be allowed an opportunity to amend his complaint to assert an FTCA claim against the United States, if he so desires. *See Brown v. Fed. Bureau of Prisons,* No. 5:11-cv-63-DCB-RHW, 2012 WL 1067666, * 3-4 (S.D. Miss. Mar. 29, 2012). "Granting [McNally] leave to amend is particularly critical in this case where the FTCA's sixth-month statute of limitations has likely run and would bar the action if [McNally] refiled and the Attorney General then determined to substitute the United States as a party." *Id.* at *3 (citing *Norman v. United States,* 467 F.3d 773, 776 (D.C. Cir. 2006); *Bazrowx ,* 136 F.3d at 1054); *see* 28 U.S.C. § 2401(b).

## RECOMMENDATION

It is recommended that the Motion to Dismiss, or in the Alternative for Summary Judgment (ECF No. 30), filed by Director Inch, Regional Director Keller, Dr. Chambers, Warden Nash, and Dr. Natal, be GRANTED IN PART AND DENIED IN PART. The Eighth Amendment claims against Director Inch and Regional Director Inch should be dismissed without prejudice for lack of personal jurisdiction. The Eighth Amendment claims against Dr. Chambers must be dismissed with prejudice because 42 U.S.C. § 233(a) bars a *Bivens* action against a USPHS officer for actions arising out of the performance of medical or related functions within the scope of his office. The Eighth Amendment claims against Warden Nash should be dismissed with prejudice because Warden Nash lacked personal involvement in McNally's medical care. The Eighth Amendment claims against Dr. Natal should be dismissed with prejudice because Dr. Natal is entitled to qualified immunity. McNally, a *pro se* litigant, should be allowed an opportunity to amend his Complaint to advance a claim against the United States under the FTCA.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Local Rule 72(a)(3) of the Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi, after service of a copy of this Report and Recommendation, each party has fourteen (14) days to serve and file with the Clerk of Court any written objections to it. Within seven days of service of objections, the opposing party must either serve and file a response or notify the District Judge

that he does not intend to respond to the objection. An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects; the District Judge need consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions within fourteen (14) days of being served a copy is barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion accepted by the District Court to which he did not object. *Douglass v. United Services Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED**, this the 7th day of February, 2019.

s/ *John C. Gargiulo*

JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE