## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**JAMES ANTHONY MCNALLY**                                          **PLAINTIFF**

**V.**                                   **CIVIL ACTION NO. 3:17-cv-00847-CWR-JCG**

**DIRECTOR B.O.P. MARK INCH**
**REGIONAL DIRECTOR J.A. KELLER, B.O.P.**
**WARDEN C. NASH Yazoo Med. F.C.C., B.O.P.**
**DR. UNKNOWN NATAL Physician, Yazoo F.C.C., B.O.P.**
**DR. WILLIAM PORTER Contract Surgeon for B.O.P.**          **DEFENDANTS**

## REPORT AND RECOMMENDATION

BEFORE THE COURT is William Porter, M.D.'s Motion to Dismiss or in the Alternative for Summary Judgment. (ECF No. 41). *Pro se* Plaintiff James Anthony McNally, a postconviction inmate in the custody of the Federal Bureau of Prisons (BOP), has filed a Response (ECF No. 44), and Dr. Porter has filed a Rebuttal (ECF No. 43). Having considered the submissions of the parties, the record, and relevant law, it is recommended that Dr. Porter's Motion to Dismiss or in the Alternative for Summary Judgment be GRANTED IN PART AND DENIED IN PART. The *Bivens* claim against Dr. Porter must be dismissed because Dr. Porter is not a federal officer acting under color of federal authority.[1] However, construing McNally's *pro se* Complaint liberally, as the Court must, McNally is pursuing a state law claim for medical negligence/malpractice claim against Dr. Porter. The Court may exercise supplemental jurisdiction under 28 U.S.C. § 1367(a) over the state law claim against Dr. Porter because it is sufficiently related to McNally's Federal Tort

---

[1] *See Bivens v. Six Unknown Fed. Agents,* 403 U.S. 388, 395–97 (1971).

Claims Act (FTCA) [2] medical negligence/malpractice claim against the United States. Dr. Porter should not be dismissed as a defendant at this time.

## BACKGROUND

McNally has been in BOP custody since 2000, serving a sentence for bank robbery and related crimes. At the time he filed this suit in October 2017, McNally was housed at Federal Correction Complex in Yazoo, Mississippi (FCC Yazoo). He has been transferred more than once since that time and is currently housed at AUSP Thomson, a satellite camp in Thomson, Illinois.

McNally suffers from a torn rotator cuff in his right shoulder. He was injured in a 1986 accident. (ECF No. 1-5, at 3). While in BOP custody in 2001, McNally fractured his humerus while arm wrestling. (ECF No. 30-2, at 27). McNally had open reduction and internal fixation surgery to repair the fracture. *Id.* In November 2015, after being transferred to FCC Yazoo, McNally was doing pushups when he heard a popping sound and experienced pain in his shoulder. *Id.* at 27, 32. Medical records indicate that McNally's shoulder was x-rayed on December 16, 2015, and they also refer to an MRI being conducted on December 16, 2015. (ECF No. 32, at 27; ECF No. 43-1, at 1).

McNally was evaluated by Dr. Porter, an orthopedic surgeon, in January 2016. (*Id.* at 3). According to his affidavit, Dr. Porter is employed by Vicksburg Clinic, LLC, a privately-owned company affiliated with River Region Medical Center in Vicksburg, Mississippi, which in turn has a contract with Seven Corners,

---

[2] *See* 28 U.S.C. § 2672 et seq.

Inc., a private entity. (ECF No. 41-1, at 1). Seven Corners contracts with BOP to provide physicians on an as-needed basis to examine and treat federal inmates. *Id.* Dr. Porter sees patients from FCC Yazoo approximately twice a month and is paid by Seven Corners to do so. *Id.* Seven Corners requested that Dr. Porter examine and possibly treat McNally's chronic shoulder pain. *Id.* Dr. Porter avers in an affidavit that he has no contractual or employment relationship with the United States Government, BOP, or FCC Yazoo. *Id.*

Dr. Porter diagnosed McNally with large spurs on acromion with impingement secondary to the spur. (ECF No. 30-2, at 26; ECF No. 41-1, at 2). Dr. Porter "[r]ecommended mini-open decompression surgery and possible repair of the patient's rotator cuff." (ECF No. 41-1, at 30). McNally underwent mini-open decompression surgery, performed by Dr. Porter, on July 27, 2016. (ECF No. 41, at 2). During surgery, Dr. Porter "visualized the rotator cuff and determined that Mr. McNally had a pre-existing rotator cuff tear of such severity that there was nothing surgically that could be done to repair it." *Id.* Dr. Porter saw McNally for post-surgical follow-up on August 10, 2016, and observed that McNally was healing well. *Id.* Dr. Porter prescribed strengthening exercises. *Id.* Dr. Porter has not treated McNally since August 10, 2016. *Id.*

McNally maintains that his pain after surgery by Dr. Porter is worse than before and resulted in even more lack of range of motion. (ECF No. 30-2, at 63, 66). McNally alleges that Dr. Porter "botched" the surgery and should have reviewed an MRI prior to surgery. (ECF No. 1, at 7). McNally denies that an MRI was performed

prior to surgery, submitting that the "one and only MRI was done post-op on 8/22/16, ordered by Dr. Natal, to see what damage was done by Dr. Porter." (ECF No. 44, at 4). McNally contends that "any normal medical professional could clearly see via an MRI, that the tendons in the Plaintiff's shoulder were beyond normal surgery." *Id.*

McNally was approved to be evaluated by a second orthopedic surgeon, Dr. Dare, who diagnosed McNally with "[c]hronic severe rotator cuff tear unrepairable, recommending arthroscopic right rotator repair with allograft/xerograft augmentation." *Id.* at 86. BOP certification for another surgical procedure to address McNally's continued complaints of shoulder pain "was disapproved until conservative treatment can be completed since there was no evidence of attempted conservative therapy or a joint injection therapy trial." (ECF No. 1-3, at 1).

McNally was approved for corticosteroid injections and received injections on July 12, 2017. (ECF No. 40, at 15; ECF No. 44-7, at 2). Dr. Dare continued to recommend surgery and advised that a steroid would only temporarily relieve pain and would not cause healing. (ECF No. 30-2, at 98). In his Declaration of May 4, 2018, Dr. Chambers states that "additional surgical intervention remains under consideration." *Id.* at 4.

## DISCUSSION

Because the parties have submitted matters outside the pleadings, Dr. Porter's Motion is considered as one seeking summary judgment. *See* Fed. R. Civ. P. 12(b); *Young v. Biggers,* 938 F.2d 565, 568 (5th Cir. 1991). Summary judgment

"shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *see also Moore v. Miss. Valley State Univ.,* 871 F.2d 545, 549 (5th Cir. 1989); *Washington v. Armstrong World Indus.,* 839 F.2d 1121, 1122 (5th Cir. 1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. The movant need not, however, support the motion with materials that negate the opponent's claim. *Id.* As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. *Id.* at 323-24. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

Summary judgment can be granted only if everything in the record

demonstrates that no genuine issue of material fact exists. It is improper for the district court to "resolve factual disputes by weighing conflicting evidence, . . . since it is the province of the jury to assess the probative value of the evidence." *Kennett-Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is also improper where the court merely believes it unlikely that the non-moving party will be able to prevail at trial. *Nat'l Screen Serv. Corp. v. Poster Exch., Inc.,* 305 F.2d 647, 651 (5th Cir. 1962).

The Eighth Amendment to the United States Constitution states "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Eighth Amendment requires that prisoners be afforded "humane conditions of confinement," meaning that prison officials must "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994).

In *Bivens,* the United States Supreme Court held that where a federal officer "acting under color of [federal] authority" commits a constitutional tort, a cause of action for money damages arises directly under the Constitution. *Bivens,* 403 U.S. at 389. Bivens filed suit after agents of the Federal Bureau of Narcotics entered his apartment and arrested him for narcotics violations without a warrant or probable cause in violation of the Fourth Amendment. *Id.* The Supreme Court recognized that neither the Constitution nor a statute provided a federal cause of action and damages remedy in this situation. Although the Supreme Court permitted the damages claim to proceed in *Bivens,* it signaled that "such a remedy will not be

6

available when 'special factors counselling hesitation' are present." *Chappell v. Wallace,* 462 U.S. 296, 298 (1983) (quoting *Bivens,* 403 U.S. at 396).

Since *Bivens* was decided in 1971, the Supreme Court has expanded it only twice to other contexts. In *Davis v. Passman,* the Supreme Court recognized a *Bivens* remedy for violation of the Equal Protection Clause of the Fifth Amendment where it was alleged that a Congressman fired an administrative assistant based on her gender. 442 U.S. 228, 248-49 (1979). In *Carlson v. Green,* the Supreme Court recognized a *Bivens* remedy where federal prison officials failed to provide an inmate with proper medical care in violation of his Eighth Amendment right to be free from cruel and unusual punishment. 446 U.S. 14, 16-18 (1980).

*Carlson* concerned an inmate in a federal institution operated by BOP, and the defendants were comprised of employees of the federal government who worked at the institution. Recognizing that tort claims could ordinarily not be brought against federal employees because they are shielded from tort liability under the FTCA, the Supreme Court implied a *Bivens* action based on the need for an alternative remedy to deter officers from violating constitutional rights. *Id.* at 18-20.

Subsequently, the Supreme Court decided *Correctional Servs. Corp. v. Malesko,* 534 U.S. 61 (2001), which involved a prisoner's Eighth Amendment medical claims, but ones which were raised against a private company that had contracted with BOP to operate one of its prisons. In holding that the private company was not susceptible to suit under *Bivens,* the Court reasoned in part that,

because the prisoner was able to bring a state tort action for damages, unlike the prisoner in *Carlson,* he did not "lack effective remedies." *Id.* at 72-74.

The Supreme Court then decided *Minneci v. Pollard,* 565 U.S. 118 (2012), which held that no *Bivens* cause of action should be implied where an employee of a private company operating a federal prison was sued under the Eighth Amendment on a claim of medical indifference. The Supreme Court explained that the prisoner could bring tort claims for negligence or malpractice under state law against the private employees, and thus the prisoner's opportunity to pursue a claim for damages was roughly the same. *Id.* at 129-30. The Supreme Court noted

> that state tort law may sometimes prove less generous than would a *Bivens* action, say, by capping damages, or by forbidding recovery for emotional suffering unconnected with physical harm, or by imposing procedural obstacles . . . . But we cannot find in this fact sufficient basis to determine state law inadequate.
>
> State-law remedies and a potential *Bivens* remedy need not be perfectly congruent. Indeed, federal law as well as state law contains limitations. . . . . And *Bivens* actions, even if more generous to plaintiffs in some respects, may be less generous in others . . . . .
>
> Rather, in principle, the question is whether, in general, state tort law remedies provide roughly similar incentives for potential defendants to comply with the Eighth Amendment while also providing roughly similar compensation to victims of violations.

*Id.* at 129-30.

McNally has confirmed that he is seeking relief under *Bivens* and not 42 U.S.C. § 1983. (ECF No. 8-1, at 2). Dr. Porter asserts that, as a matter of law, he is not amenable to suit under *Bivens* because he is not a federal officer acting under

color of federal authority. McNally contends that Dr. Porter is subject to *Bivens* because he has a "working contractual relationship with the federal prison, FCC Yazoo City, and the federal U.S. government." (ECF No. 44, at 2). As support, McNally points to stamps on two pages of his BOP medical records, providing "Dr. W. Porter, Contract Orthopedic Surgeon FCC Yazoo City." (ECF No. 44-2, at 1, 3). The stamps are consistent with Dr. Porter's representation that he is privately employed and engaged by a private company, which in turn has a contract with BOP to provide physicians to FCC Yazoo prisoners on an as-needed basis. McNally has submitted no competent summary judgment evidence creating a genuine issue of material fact as to whether Dr. Porter is a federal actor for purposes of *Bivens*.

Dismissing the *Bivens* claim against Dr. Porter is compelled by *Malesko* and *Minneci* where the Supreme Court refused to imply a *Bivens* action under similar circumstances. In *Malesko,* the defendant was a private contractor that assumed operation of the entire prison. In *Minneci,* the defendant was a prison officer at a private prison. Dr. Porter is privately employed and engaged by a private company, "albeit not a company which has contracted to operate an entire prison facility but only to handle one aspect of the prison's operation. [Dr. Porter] is still privately employed, and as such he is amenable to suit under state law." *McAdams v. Pelt, No. 5:15-CV-312-MW-EMT,* 2018 WL 7350348, at *3 (N.D. Fla. Dec. 3, 2018)*, report and recommendation adopted,* No. 5:15-CV-312-MW-EMT, 2019 WL 653091 (N.D. Fla. Feb. 15, 2019); *see El-Hanafi v. United States*, 40 F. Supp. 3d 358, 364 (S.D.N.Y. 2014).

A *Bivens* remedy against Dr. Porter is not available because McNally has an alternative remedy under state tort law capable of protecting the constitutional issues at stake. Mississippi law provides a tort action for medical negligence/malpractice. Dr. Porter acknowledges that "the specific allegations applicable to Dr. Porter are nothing more than garden variety medical malpractice claims (which Dr. Porter denies)." (ECF No. 42, at 4). *Pro se* complaints should be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520 (1972); *see Perez v. United States,* 312 F.3d 191, 194-95 (5th Cir. 2002). The Court should construe the claim against Dr. Porter as a state law claim for medical negligence/malpractice.

McNally is pursuing an FTCA claim for medical negligence/malpractice against the United States. The Court has original jurisdiction over McNally's FTCA claim under 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the state law claim for medical negligence/malpractice against Dr. Porter under 28 U.S.C. § 1367(a) because the FTCA claim and state law tort claim are sufficiently related and "derive from a common nucleus of operative fact," namely the medical treatment for McNally's shoulder condition. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725 (1966). "[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Because the

Court has supplemental jurisdiction over the state law claim against Dr. Porter, Dr. Porter should not be dismissed as a defendant at this time.

## RECOMMENDATION

It is recommended that Dr. Porter's Motion to Dismiss or in the Alternative for Summary Judgment (ECF No. 41) be GRANTED IN PART AND DENIED IN PART. The Eighth Amendment *Bivens* claim against Dr. Porter should be dismissed with prejudice. McNally's claim against Dr. Porter should be construed as a state law medical negligence/malpractice claim over which there is supplemental jurisdiction under 28 U.S.C. § 1367(a).

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Local Role 72(a)(3) of the Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi, after service of a copy of this Report and Recommendation, each party has fourteen (14) days to serve and file with the Clerk of Court any written objections to it. Within seven days of service of objections, the opposing party must either serve and file a response or notify the District Judge that he does not intend to respond to the objection. An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects; the District Judge need consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions within fourteen (14) days of being served a copy is barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal

conclusion accepted by the District Court to which he did not object. *Douglass v.*

*United Services Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

      **SIGNED**, this the 6th day of May, 2019.

*s/ John C. Gargiulo*
_____
JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE